# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| IMMERSION CORPORATION, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 6:22-cv-00541-ADA |
| | § | |
| v. | § | |
| | § | <u>JURY TRIAL DEMANDED</u> |
| META PLATFORMS, INC., *f/k/a* FACEBOOK, INC., | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

## <u>DEFENDANT META PLATFORMS, INC.'S</u>
## <u>REPLY CLAIM CONSTRUCTION BRIEF</u>

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT ...................................................................................................... 1

        A.      "control gesture" ..................................................................................... 1

        B.      "confirmation haptic effect" ................................................................... 8

        C.      "context metadata" ................................................................................. 9

        D.      "haptic parameter" ............................................................................... 10

        E.      "real space" and "free space" .............................................................. 11

        F.      "augmented reality" ............................................................................. 12

        G.      "chain" ('222 patent, claim 15) ........................................................... 14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3M Innovative Props. Co. v. Tredegar Corp.*,
    725 F.3d 1315 (Fed. Cir. 2013)..................................................................................3

*Abbott Lab'ys v. Andrx Pharms., Inc.*,
    473 F.3d 1196 (Fed. Cir. 2007)................................................................................10

*Abbott Lab'ys v. Sandoz, Inc.*,
    544 F.3d 1341 (Fed. Cir. 2008)..................................................................................6

*Braintree Lab'ys, Inc. v. Novel Lab'ys, Inc.*,
    749 F.3d 1349 (Fed. Cir. 2014)..................................................................................2

*Chevron U.S.A. Inc. v. Univ. of Wyoming Rsch. Corp.*,
    978 F.3d 1361 (Fed. Cir. 2020)..................................................................................7

*Cisco Sys. v. Innovative Wireless Sols., LLC*,
    No. 1:13-cv-00492-LY, 2015 U.S. Dist. LEXIS 2014 (W.D. Tex. Jan. 8,
    2015) ..........................................................................................................................7

*Flypsi, Inc. v. Dialpad, Inc.*,
    No. 6:21-CV-00642-ADA, 2022 WL 3593131 (W.D. Tex. Aug. 22, 2022).........3, 5

*Intell. Ventures I LLC v. Motorola Mobility LLC*,
    870 F.3d 1320 (Fed. Cir. 2017)..................................................................................7

*IOENGINE, LLC v. Roku, Inc.*,
    No. 6:21-CV-01296-ADA, 2022 U.S. Dist. LEXIS 189696 (W.D. Tex. Oct.
    17, 2022) ....................................................................................................................3

*Nitride Semiconductors Co. v. Lite-On Tech. Corp.*,
    No. W-21-CV-00183-ADA, 2022 U.S. Dist. LEXIS 215332 (W.D. Tex. Nov.
    30, 2022) ....................................................................................................................3

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)........................................................................3, 10, 12

*Poly-Am., L.P. v. API Indus., Inc.*,
    839 F.3d 1131 (Fed. Cir. 2016)..................................................................................7

*Profectus Tech. LLC v. Huawei Techs. Co.*,
    No. 6:11-cv-474, 2014 U.S. Dist. LEXIS 53157 (E.D. Tex. Apr. 16, 2014)............6

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n*,
   511 F.3d 1132 (Fed. Cir. 2007)............................................................................2, 10

*Sonrai Memory Ltd. v. Kingston Tech. Co.*,
   No. 6-21-CV-01284-ADA-DTG, 2022 U.S. Dist. LEXIS 150832 (W.D. Tex.
   Aug. 23, 2022) .........................................................................................................5

*Sparton Corp. v. United States*,
   68 Fed. Cl. 34 (2005).................................................................................................6

*USB Bridge Sols., LLC v. Buffalo Inc.*,
   No. 1-17-CV-001158-LY, 2020 U.S. Dist. LEXIS 67678 (W.D. Tex. Apr. 17,
   2020)...........................................................................................................................5

## I.      INTRODUCTION

Defendant's proposed constructions comport with basic canons of claim construction and will be helpful to the jury.  Neither Plaintiff's proposals of "plain and ordinary meaning" nor its proposed "alternate constructions" are supported by its citations to case law, patent specifications, or extrinsic evidence, and these constructions (or non-constructions) will not assist the jury.  Moreover, Plaintiff's responsive brief demonstrates that the parties dispute the meaning of each of the terms, illustrating a need for a construction beyond "plain and ordinary" meaning.  On terms where Plaintiff does not offer an alternate construction, Plaintiff has no reasonable dispute with Defendant's proposals, which will assist the jury.  The Court should adopt Defendant's proposed constructions.

## II.     ARGUMENT

### A.      "control gesture"

| **Claim Term** | **Defendant's Proposal** | **Plaintiff's Proposal** |
|---|---|---|
| "control gesture" ('806 patent, claims 11, 12, 15) | "a gesture made by a user that is a single and discrete control input having separate portions. The separate portions must be performed in specific order and/or with a specific timing to effectively achieve the control input associated with the 'control gesture.' Performance of the separate portions, on their own, will not result in the control input associated with the 'control gesture' as a whole (e.g., a 'control gesture' is not merely a combination of other gestures, each associated with its own control input)" | Plain and ordinary meaning<br><br>To the extent the Court believes that any further construction is necessary, the term may include "a user manipulation having separate portions that must be performed in a specific order and/or with a specific timing" |

Defendant's proposal for "control gesture" appropriately captures the specification's definitional language, while omitting purely exemplary language found throughout the

specification.  Defendant's proposal should be adopted because it comports with basic canons of claim construction and Federal Circuit law.  *See Braintree Lab'ys, Inc. v. Novel Lab'ys, Inc.*, 749 F.3d 1349, 1356 (Fed. Cir. 2014) (reversing district court's "modification of the clear language found in the specification" when patentee used "as used herein" language); *see also* ECF No. 33 at 4 (citing cases).  Plaintiff's proposal ignores the patentee's clear and unmistakable choice to act as a lexicographer through the use of the phrase "as used herein" and related definitional language.

There is no support for Plaintiff's position.  Initially, Plaintiff argues for "plain and ordinary meaning" and asserts that both "control" and "gesture" could be easily understood by a jury.  But this misses the point and ignores the law regarding lexicography.  The '806 patent expressly defines the phrase "control gesture," as explained in Defendant's opening brief, by using the phrase "as used herein," combined with other clear and unmistakable disavowals of scope using language such as "must," "will not," and "is not."  (ECF No. 33 at 3-5 (citing to '806 patent specification).)  Thus, regardless of whether the individual words in the term "control gesture" have their own meanings, the patentee's lexicography must control for the phrase as a whole. *Braintree Lab'ys*, 749 F.3d at 1356 ("Under our precedent, the patentee's lexicography must govern the claim construction analysis.").  In addition, the use of quotation marks around the phrase "control gesture" in this paragraph is "a strong indication that what follows is a definition." *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1136 (Fed. Cir. 2007).  The combination of the term "as used herein" and the use of quotations is shown in the below image from the patent:

> As used herein, a "control gesture" refers to a gesture made by a user that is a single and discrete control input having separate portions. The separate portions must be performed in specific order and/or with a specific timing to effectively achieve the control input associated with the "control gesture." Performance of the separate portions, on their own, will not result in the control input associated with the "control gesture" as a whole (e.g., a "control gesture" is not merely a combination of other gestures, each associated with its own control input). In some examples, a "control gesture" is an

('806, 5:7-16 (highlighting added).)  Meanwhile, Plaintiff's cited cases are inapposite, as none involve a patentee acting as its own lexicographer. *Nitride Semiconductors Co. v. Lite-On Tech. Corp.*, No. W-21-CV-00183-ADA, 2022 U.S. Dist. LEXIS 215332, at *27-29 (W.D. Tex. Nov. 30, 2022) (only finding plain and ordinary meaning since neither party alleged there was lexicography or disavowal); *IOENGINE, LLC v. Roku, Inc.*, No. 6:21-CV-01296-ADA, 2022 U.S. Dist. LEXIS 189696, at *19-24 (W.D. Tex. Oct. 17, 2022) (same).[1]

Perhaps sensing the lack of support for "plain and ordinary" with this intrinsic record, Plaintiff also asserts a new "alternate construction", but again ignores the lexicographic definition in the specification.  Moreover, Plaintiff does not explain how the plain meanings of "control" or "gesture" lead to construing "control gesture" as a "user manipulation having separate portions that must be performed in a specific order and/or with a specific timing."  Regardless, Plaintiff's proposal demonstrates that the parties have a genuine dispute as to the meaning of this term, and thus a construction other than "plain meaning" is necessary.  *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) ("When the parties raise an actual

---

[1] Plaintiff repeatedly cites to cases such as *Flypsi, Inc. v. Dialpad, Inc.*, No. 6:21-CV-00642-ADA, 2022 WL 3593131, at *1 (W.D. Tex. Aug. 22, 2022), but they do not apply since the patentee's statements are not "amenable to multiple reasonable interpretations." *Flypsi* did not involve an analysis of phrases such as "as used herein" or other clear definitional or disavowal language. *Id.; see also 3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013) (same).

dispute regarding the proper scope of these claims, the court, not the jury, must resolve that dispute.").

Plaintiff's citation to the specification does not support its proposed alternate construction. Plaintiff's passage states:

> Gestures input to the computer (or other computing device) via touch may be control gestures. It will be appreciated that the description of gestures involving touch are not intended to limit the scope of control gestures discussed herein. Control gestures may include (with or without touch gestures) manipulation of a component or body (e.g., "tilt" controls), manipulation of one or more stick controls, manipulation of one or more buttons, manipulation of one or more switches, and/or manipulation of or interaction with other interface features.

('806, 17:58-67.)  That a control gesture "***may*** include" a "manipulation" is of no moment, as this is not definitional language.  And this cited passage does not include any of the remainder of Plaintiff's alternative construction, which actually appears to be a cherry-picked portion of ***Defendant's*** construction.[2]  Regardless, Plaintiff's proposal ignores key limitations of its own lexicography: that a "control gesture" is "a gesture made by a user that is a single and discrete control input having separate portions;" that the performance of the separate portions is conducted "to effectively achieve the control input associated with the 'control gesture';" that "[p]erformance of the separate portions, on their own, will not result in the control input associated with the 'control gesture' as a whole" and that "a 'control gesture' is not merely a combination of other gestures, each associated with its own control input." ('806, 5:7-16.)

Contrary to Plaintiff's allegations, Defendant did not "read an entire paragraph" of the description into the proposed construction.  Rather, Defendant carefully tailored the construction to focus on the patentee's lexicography and remove exemplary statements. (*See* ECF No. 33 at 5

---

[2] This may be due to a typographical error in Plaintiff's citation, but in either event, it points towards adopting Defendant's construction.

(citing to exemplary language in '806 patent at 5:16-19).)  Plaintiff seizes upon the use of the word "e.g." in a parenthetical in Defendant's construction, but the parenthetical language that follows – "a 'control gesture' is not merely a combination of other gestures, each associated with its own control input" – explains what is *not* included in the scope of the term "control gesture."  (*See* ECF No. 33 at 5 (quoting '806, 5:7-18).)  The parenthetical does not comprise "particular embodiments and examples appearing in the specification" (as in *Flypsi*, 2022 WL 3593131, at *1) but is an explicit statement of what does not fall within the scope of the scope of the term "control gesture" as it has been defined by the patentee.  Plaintiff attempts to characterize this language as "permissive," but it is difficult to read a statement of what a "control gesture" explicitly "***is not***" as permissive.  Even Plaintiff's own characterization – that it "simply restates the previous disclosure in the negative as an example" – does not demonstrate any "permissive" nature, but rather additional explanation of what the definition itself is.  (ECF No. 48 ("Resp.") at 5.)  This is distinct from Plaintiff's case that found the phrase "generally requires" to be "permissive, but not obligatory" – in stark contrast to the obligatory, nonpermissive, language used here.  *See Sonrai Memory Ltd. v. Kingston Tech. Co.*, No. 6-21-CV-01284-ADA-DTG, 2022 U.S. Dist. LEXIS 150832, at *25-26 (W.D. Tex. Aug. 23, 2022).

Patentee's clear disavowal of claim scope must be reflected in the construction to avoid error.  Plaintiff's reliance on *USB Bridge Solutions, LLC v. Buffalo Inc.*, No. 1-17-CV-001158-LY, 2020 U.S. Dist. LEXIS 67678, at *33-34, *37-38 (W.D. Tex. Apr. 17, 2020), does not alter the conclusion that the negative limitation in patentee's disavowal must be included.  In *USB Bridge*, the court declined to introduce negative limitations where the defendants could not "point to any instance of clear disavowal, disclaimer, or estoppel."  *Id.* at *37.  In contrast, here the scope of the term "control gesture" is defined in part by explicit statements as to what it ***is not***.

Plaintiff goes on to argue that because the word "gesture" appears in Defendant's construction, this somehow demonstrates that no construction is needed. The word gesture standing alone may be a term that is understandable, but the full claimed term – control gesture – requires construction since the patentee explicitly told what that phrase meant "as used herein." Here the phrase "control gesture" is a type of gesture that is laid out in column 5 of the specification as to what it both "is" and "is not." Plaintiff's inapposite cases fall into two categories. The first involve proposed constructions that were truly circular and not lexicographic, unlike the construction here. *Profectus Tech. LLC v. Huawei Techs. Co.*, No. 6:11-cv-474, 2014 U.S. Dist. LEXIS 53157, at *21-23 (E.D. Tex. Apr. 16, 2014) (rejecting proposed construction of "to make active or more active" for term "activating"); *Sparton Corp. v. United States*, 68 Fed. Cl. 34, 47 (2005) (finding improper a definition that uses the entire ***term*** as definitional language). The second category merely state basic principles that are consistent with Defendant's proposed construction. *Abbott Lab'ys v. Sandoz, Inc.*, 544 F.3d 1341, 1360 (Fed. Cir. 2008) (finding that using a word in a construction that does not appear in the specification is acceptable as defining a term "usually requires use of words other than the words that are being defined"). Defendant's proposed construction does not use the phrase "control gesture" to define itself, but rather provides the metes and bounds of what gestures are "control gestures" using the patent's express definitional language and disclaimers of scope.

Plaintiff's claim differentiation argument also fails. Claim 11 explains that the "control gesture is a gesture associated with a command input to the system, and includes an initial portion, a first intermediate portion, and an ending portion" which is consistent with Defendant's construction that the "control gesture" is "a single and discrete control input having separate portions." ('806, claim 11, 5:7-9.) Claim 11 requires the control gesture be "associated with ***a***

6

command input to the system." (*Id.*, claim 11 (emphasis added).)  Claim 15 merely reiterates that

that particular command input associated with that control gesture is "a single, discrete command."

(*Id.*, claim 15.)   That both the control gesture and the command input are "single discrete

commands" is logical and consistent.   Regardless, basic tenets of claim construction require that

claim differentiation cannot be used to broaden claims beyond specified lexicography and clear

disavowals of scope found in the intrinsic record.   *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d

1131, 1137 (Fed. Cir. 2016) (holding "claim differentiation does not serve to broaden claims

beyond their meaning in light of the patent as a whole, and it cannot override clear statements of

claim scope found in the specification and prosecution history"); *Intell. Ventures I LLC v.

Motorola Mobility LLC*, 870 F.3d 1320, 1326 (Fed. Cir. 2017) (doctrine of claim differentiation

cannot broaden claims beyond clear disclaimer of scope in specification).

Finally, Plaintiff argues that Defendant's case law "do[es] not support importing an entire

paragraph into its construction when finding lexicography," citing to *Chevron U.S.A. Inc. v. Univ.

of Wyoming Research Corp.*, 978 F.3d 1361, 1364 (Fed. Cir. 2020), and alleges that "the Federal

Circuit notably did not adopt the entirety of the 'as used herein' statement sought by Chevron."

(Resp. at 6-7.)  But Plaintiff misstates the holding and context of this case, as well as Chevron's

position.  *Chevron* involved an interference where the broadest reasonable interpretation was

applied, and neither party sought to include the entirety of the "as used herein" statement.

*Chevron*, 978 F.3d at 1363-64 (listing both parties' proposed construction, which do not match the

"as used herein" language in the patent, and confirming that the broadest reasonable interpretation

must apply).   As neither party argued the entire "as used herein" passage was appropriate, its

inclusion (or lack thereof) was not before the Federal Circuit.  In Plaintiff's additional cited case,

*Cisco Sys. v. Innovative Wireless Solutions, LLC*, No. 1:13-cv-00492-LY, 2015 U.S. Dist. LEXIS

2014, at *17-19 (W.D. Tex. Jan. 8, 2015), the Court adopted a construction that was entirely consistent with the "as used herein" language, which also (unlike here) referred to well-known, published standards (such as Ethernet) and further pointed to those standards' definitions. *Cisco* does not counsel that the Court here should permit Plaintiff to walk away from its lexicography, which, for example, does not refer to published standards that match the scope of the appropriate definitional language.

Regardless, Defendant's proposal tracks the definitional language found in the specification, while not incorporating merely exemplary language. As such, Defendant does not attempt to simply import a paragraph from the specification. If the patentee had wanted a shorter definition, it could have made one. The length is not dispositive; rather, the use of the lexicographic phrase "as used herein" is.

## B. "confirmation haptic effect"

| Claim Term | Defendant's Revised Proposal[3] | Plaintiff's Proposal |
|---|---|---|
| "confirmation haptic effect" ('524 patent, claims 1, 11) | "a haptic ~~feedback~~ effect ~~that is generated in response to a user interaction with a user interface element, in order~~ used to confirm the interaction with the user interface element" | Plain and ordinary meaning<br>To the extent the Court believes that any further construction is necessary, the plain and ordinary meaning includes "one of multiple possible tactile feedback events for a single user interface element, customized based on context metadata, to confirm the interaction with the user interface element" |

Had plaintiff proposed its alternative before the briefing, Defendant may have not included this term for construction. With their proposals, it is clear that the parties agree that the purpose

---

[3] For each of Defendant's revised constructions, Defendant has underlined the additional language it has added and struck through the language it has removed.

of the "confirmation haptic effect" is "to confirm the interaction with the user interface element." As a result, Defendant would propose simply that the "confirmation haptic effect" is "a haptic effect used to confirm the interaction with the user interface element." Defendant's revised proposal is effectively the plain meaning of the term, including the phrase "to confirm the interaction with the user interface element" which both parties agree is the purpose of the "confirmation haptic effect." Plaintiff's alternate proposal, on the other hand, imports unnecessary limitations from the specification, each of which are referred to through use of exemplary language, such as "can," and thus does not comprise the "plain and ordinary" meaning. (*See, e.g.*, Resp. at 9-10 (citing to '524, 1:14-26 ("can be configured), 2:20-24 ("can generate"), 4:58-64 ("can be used"), 4:64-5:2 ("can cause")).)

C.      **"context metadata"**

| **Claim Term** | **Defendant's Revised Proposal** | **Plaintiff's Proposal** |
|---|---|---|
| "context metadata" ('524 patent, claims 1, 6, 11, 13) | "any data associated with <u>a context of</u> an interaction with the user interface element" | Plain and ordinary meaning |

The parties' key dispute with respect to "context metadata" is whether the term should be construed. Here, a construction would assist the jury with the term "context metadata," which is not a term that has a plain and ordinary meaning (nor does Plaintiff explain what such meaning is). That said, as Plaintiff's primary concern with Defendant's construction appears to be that Defendant did not include a reference to "context," Defendant has provided a revised proposal which includes such reference. (Resp. at 12.)

Plaintiff strangely suggests it is legal error to provide the jury with a ***<u>construction</u>*** for a term when a party does not meet what Plaintiff claims are the "exacting" standards for the "only two exceptions" against a customary meaning. (Resp. at 12.) This is not the law. Apart from

9

ignoring *Indacon* and its progeny, (ECF No. 33 at 7), this further ignores the situation where, as here, the parties ***disagree*** as to the "plain and ordinary meaning" of a term, which would improperly leave the jury to decide claim construction.  *See O2 Micro*, 521 F.3d at 1360.  Here, Plaintiff's only dispute with Defendant's proposed construction appears to be its lack of inclusion of a reference to "context," which Defendant's revised proposal incorporates.  Defendant's revised proposal should be adopted.

   D.    **"haptic parameter"**

| **Claim Term** | **Defendant's Proposal** | **Plaintiff's Proposal** |
|---|---|---|
| "haptic parameter" ('524 patent, claims 1, 2, 3, 7, 11, 12, 14) | "a quantity of a haptic effect quality, such as magnitude, frequency, duration, amplitude (i.e., strength), waveform, or any other kind of quantifiable haptic parameter" | Plain and ordinary meaning |

   The parties primarily dispute whether this term should be construed, despite the clear lexicographic language in the specification.   Tellingly, Plaintiff does not identify any disagreements with Defendant's proposed construction.   Plaintiff instead, seemingly acknowledging that the specification acts as a dictionary for this term, suggests that the meaning is "readily apparent" by citing to two passages from the specification that support *Defendant's* construction.  (Resp. at 13.)   One of the citations is the exact definitional language in the specification from which Defendant's proposed construction comes: "A haptic parameter ***is*** a quantity of a haptic effect quality, such as magnitude, frequency, duration, amplitude (i.e., strength), waveform, or any other kind of quantifiable haptic parameter." ('524, 6:23-25 (emphasis added); Resp. at 13.)  *See Sinorgchem*, 511 F.3d at 1136 ("the word 'is,' again a term used here in the specification, may 'signify that a patentee is serving as its own lexicographer.' (quoting *Abbott Lab'ys v. Andrx Pharms., Inc.*, 473 F.3d 1196, 1210 (Fed. Cir. 2007)))."   The other citation is a

statement that "[t]he customization of the confirmation haptic effect can be a modification of one or more haptic parameters, such as, but not limited to, magnitude, duration, frequency, and waveform," which is entirely consistent with Defendant's proposed construction (which lists similar examples of haptic parameters).  ('524, 2:17-20; Resp. at 13.)  The Court should therefore adopt Defendant's construction as it is definitional, is consistent with language relied upon by both parties, and will help the jury understand the metes and bounds of the term "haptic parameter."[4]

E.    "real space" and "free space"

| Claim Term | Defendant's Revised Proposal | Plaintiff's Proposal |
|---|---|---|
| "real space" ('217 patent, claim 1; '143 patent, claims 1, 8, 15) and "free space" ('298 patent, claims 1, 9, 17) | "a three-dimensional area in the real world" | Plain and ordinary meaning<br>To the extent the Court believes that any further construction is necessary, the plain and ordinary meaning includes "the three-dimensional real world user surroundings" |

In view of Plaintiff's proposed "alternate construction," the parties appear to agree that "real space" and "free space" exist in the real world (consistent with Defendant's proposed construction).  Defendant has revised its proposal to incorporate the requirement that the space be "three-dimensional" (as all real-world spaces are).  However, the parties dispute whether Plaintiff's imported requirement that this space comprise "user surroundings" is appropriate, and whether Defendant's construction inappropriately restricts this space to an "area."  (Resp. at 13-

---

[4] Out of an attempt to compromise through the claim construction process, Defendant has now agreed that the term "feedback parameter" (found in the '217 family, which is not related to the '524 family) be given its plain and ordinary meaning.  The term "feedback parameter" as used in the '217 family did not involve the patentee acting as its own lexicographer.  However, distinguishing "haptic parameter" with its lexicographic construction from "feedback parameter" would still be of assistance to the jury.

14.)  As an initial matter, these disputes yet again demonstrate the need for a construction of this term.  *See O2 Micro*, 521 F.3d at 1360.

Plaintiff's proposed "user surroundings" requirement is not required by the intrinsic evidence.  Each of Plaintiff's citations regarding user surroundings are merely examples – not definitional language.  (*See* '217, 1:28-30 ("***In some cases*** users ***may*** . . . ." (emphasis added)); *id.*, 4:58-5:4 ("The imaging device 114 ***may*** be configured . . ." and "[t]he surroundings ***may*** include a user . . . ." (emphasis added)).)  In place of this, Defendant has proposed "area," which could encompass a user's surroundings, but also apply to different areas as appropriate (including ***portions*** of a user's surroundings, which would not be captured by Plaintiff's proposed construction).

Plaintiff demonstrates through its proposed "alternate construction" that it construes the terms "real space" and "free space" significantly more narrowly than Defendant.  Nothing in the patent requires that this space encompasses the entirety of the user's surroundings.  Thus, Defendant's revised construction should be adopted.

## F.    "augmented reality"

| Claim Term | Defendant's Revised Proposal | Plaintiff's Proposal |
|---|---|---|
| "augmented reality" ('222 patent, claim 10) | "<u>one or more</u> physical objects in a real-world, physical space are concurrently displayed with <u>one or more</u> virtual objects in a virtual space" | Plain and ordinary meaning<br><br>To the extent the Court believes that any further construction is necessary, the plain and ordinary meaning includes "an environment comprising a physical space of one or more physical objects and a virtual space of one or more virtual objects that are displayed coincident with or in association with one or more physical objects in the physical space" |

While flawed, Plaintiff's proposed alternative construction confirms that "augmented reality" needs to be construed.  To narrow the disputes, Defendant has adopted certain aspects of Plaintiff's proposal in a revised, compromise construction: "one or more physical objects in a real-world, physical space are concurrently displayed with one or more virtual objects in a virtual space."  The primary differences between the parties' revised proposals are:  (1) Plaintiff does not use the phrase "real world," which is necessary to help the jury to understand what the term "physical space" means; (2) Plaintiff suggests that virtual objects are displayed "coincident with or in association with" physical objects, in contrast to Defendant's proposal that the objects are displayed "concurrently" with each other (as described in the specification); and (3) Plaintiff's construction is lengthy and potentially confusing to a jury.

Defendant's construction uses language directly from the specification's description of "augmented reality" in the background:  "[a]ugmented reality devices provide an augmented reality environment in which physical objects in a physical space are concurrently displayed with virtual objects in a virtual space."  ('222, 1:22-25.)  Plaintiff attempts to inject the language "coincident with or in association with" into the construction, but that language is merely exemplary and is somewhat confusing.  (*Id.*, 18:18-41 ("510 n ***may be*** displayed coincident with or in association with one or more physical objects . . . ." (emphasis added)).

Plaintiff's arguments in support of its construction illustrate the mischief Plaintiff's proposed construction would cause.  Specifically, Plaintiff suggests that displaying solely virtual objects would somehow qualify as "augmented reality" under its construction, even though this contradicts the specification's own background discussion of augmented reality.  Moreover, Plaintiff cannot cite to a single portion of the specification that suggests that "augmented reality" can comprise a purely virtual environment.  Indeed, it would not make sense since a purely virtual

environment does not augment reality in any way.  In fact, Figure 3 explicitly shows an "A/R Environment" that includes a "Physical Space." ('222, Fig. 3, 6:31-33.)  Similarly, neither party's extrinsic evidence supports a construction of augmented reality with only virtual objects; the external evidence is consistent that some real-world element is required otherwise, how could "reality" be augmented?  (*See* ECF Nos. 33-2 to 33-4, Morton Decl. Ex. 1 at 1321 ("the display of an ***otherwise real environment*** is augmented by means of virtual (computer graphic) objects"); Ex. 2 (augmented reality: "use of computer systems and data to overlay ***video or other real-life representations***"); Ex. 3 (augmented reality: "an enhanced version of reality created by the use of technology to overlay digital information on ***an image of something being viewed through a device***") (emphasis added to all).)

In view of the above, Defendant requests the Court adopt its proposed construction of "augmented reality."

### G.     "chain" ('222 patent, claim 15)

Defendant does not oppose Plaintiff's proposed correction of the term "chain" to "claim" in claim 15 of the '222 patent.

Dated:  January 5, 2023

/s/ Heidi L. Keefe

Heidi L. Keefe (CA Bar 178960)
COOLEY LLP
3175 Hanover Street
Palo Alto, CA 94304
Telephone:     (650) 843-5000
Email:  hkeefe@cooley.com

*Attorneys for Defendant Meta Platforms, Inc.*

15

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on January 5, 2023, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

*/s/ Heidi L. Keefe*
Heidi L. Keefe