IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| IMMERSION CORPORATION, | Case No. 6:22-cv-00541-ADA |
| Plaintiff, | |
| | **JURY TRIAL DEMANDED** |
| v. | |
| META PLATFORMS, INC. f/k/a FACEBOOK, INC., | |
| Defendant | |

**IMMERSION CORPORATION'S SUR-REPLY
CLAIM CONSTRUCTION BRIEF**

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT ................................................................................................................... 1

    A. "control gesture" ('806 patent, claims 11, 12, 15) ............................................... 1

    B. "confirmation haptic effect" ('524 patent, claims 1, 11) ..................................... 5

    C. "context metadata" ('524 patent, claims 1, 6, 11, 13) ......................................... 6

    D. "haptic parameter" ('524 patent, claims 1, 2, 3, 7, 11, 12, 14) ........................... 7

    E. "real space" ('217 patent, claim 1; '143 patent, claims 1, 8, 15) / "free space" ('298 patent, claims 1, 9, 17) ..................................................................................... 8

    F. "augmented reality" ('222 patent, claim 10) ........................................................ 9

    G. "chain" ('222 patent, claim 15) .......................................................................... 11

## TABLE OF AUTHORITIES

**CASES**

*Altiris, Inc. v. Symantec Corp.*,
    318 F.3d 1363 (Fed. Cir. 2003)......................................................................................... 8

*Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*,
    340 F.3d 1298 (Fed. Cir. 2003)....................................................................................... 13

*Braintree Lab'ys, Inc. v. Novel Lab'ys, Inc.*,
    749 F.3d 1349 (Fed. Cir. 2014)......................................................................................... 3

*Chevron U.S.A. Inc. v. Univ. of Wyoming Rsch. Corp.*,
    978 F.3d 1361 (Fed. Cir. 2020)..................................................................................... 3, 4

*Cisco Sys. v. Innovative Wireless Solutions, LLC*,
    No. 1:13-cv-00492-LY, 2015 U.S. Dist. LEXIS 2014
    (W.D. Tex. Jan. 8, 2015)................................................................................................ 3, 4

*Facebook, Inc. v. Blackberry Ltd.*,
    No. 4:18-cv-05434-JSW, 2019 U.S. Dist. LEXIS 215260
    (N.D. Cal. Dec. 13, 2019) ................................................................................................ 8

*Flypsi, Inc. v. Dialpad, Inc.*,
    No. 6:21-CV-00642-ADA, 2022 U.S. Dist. LEXIS 149866
    (W.D. Tex. Aug. 22, 2022) ........................................................................................... 1, 2

*Glob. Sessions LP v. Comerica Bank*,
    No. A-13-CA-691-SS, 2014 U.S. Dist. LEXIS 125271
    (W.D. Tex. Sept. 8, 2014) ................................................................................................ 4

*Indacon, Inc. v. Facebook, Inc.*,
    824 F.3d 1352 (Fed. Cir. 2016)......................................................................................... 7

*Koninklijke KPN N.V. v. Samsung Elecs. Co., Ltd.*,
    No. 2:14-CV-1165-JRG; No. 2:15-CV-948-JRG, 2016 U.S. Dist. LEXIS 60689
    (E.D. Tex. May 6, 2016) ............................................................................................... 7, 8

*Linear Tech. Corp. v. Int'l Trade Comm'n*,
    566 F.3d 1049 (Fed. Cir. 2009)......................................................................................... 3

*Luminara Worldwide, LLC v. Liown Elecs. Co.*,
    814 F.3d 1343 (Fed. Cir. 2016)......................................................................................... 9

*Modern Font Applications LLC v. Red Lobster Hospitality LLC*,
    6:21-CV-470-ADA, 2022 U.S. Dist. LEXIS 38316
    (W.D. Tex. March 4, 2022).............................................................................................. 2

*ParkerVision, Inc. v. LG Elecs., Inc.*,
   6:21-CV-00520-ADA, 2022 U.S. Dist. LEXIS 110168
   (W.D. Tex. June 21, 2022) ............................................................................................... 2

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n*,
   511 F.3d 1132 (Fed. Cir. 2007) ................................................................................... 9, 10

*Sun Microsystems, Inc. v. Network Appliance*,
   No. C-08-01641 EDL, 2009 U.S. Dist. LEXIS 48209
   (N.D. Cal. May 29, 2009) ............................................................................................. 10

*United States Well Servs. v. Halliburton Co.*,
   No. 6:21-CV-00367-ADA, 2022 U.S. Dist. LEXIS 50347
   (W.D. Tex. Jan. 17, 2022) ............................................................................................. 13

I.  **INTRODUCTION**

Defendant eschews established claim construction principles and, rather than engage with the claim language itself, seeks to import limitations into the claims based on misapplications of applicable authority. But the limited portions of the intrinsic record that Defendant does cite do not amount to any clear, unambiguous statements giving rise to lexicography or disclaimers. And whereas the claims use readily understandable terms, Defendant's proposals needlessly complicate things in a manner neither helpful to the jury nor consistent with the intrinsic record. For these reasons, the Court should give the claim terms at issue the full scope of their plain and ordinary meaning.

II. **ARGUMENT**

A.  **"control gesture" ('806 patent, claims 11, 12, 15)**

| Plaintiff's Construction | Defendant's Revised Construction |
|---|---|
| Plain and ordinary meaning<br><br>To the extent the Court believes that any further construction is necessary, the term may include "a user manipulation having separate portions that must be performed in a specific order and/or with a specific timing" | "a gesture made by a user that is a single and discrete control input having separate portions. The separate portions must be performed in specific order and/or with a specific timing to effectively achieve the control input associated with the 'control gesture.' Performance of the separate portions, on their own, will not result in the control input associated with the 'control gesture' as a whole (e.g., a 'control gesture' is not merely a combination of other gestures, each associated with its own control input)" |

Defendant devotes 7 of its 14 pages on reply to arguing that the Court should construe "control gesture" by replacing it with an entire paragraph of text plucked from the specification. Dkt. No. 56 at 1-8. Defendant argues its proposal "comports with basic canons of claim construction and Federal Circuit law," *id.* at 2, when it does just the opposite by importing an entire paragraph from the specification into the claim under the guise that the paragraph allegedly comprises a definition set out by the patentee. But the language cited by Defendant is not expressly definitional, and such wholesale importation is unhelpful to the jury and improper as a matter of law. *See Flypsi, Inc. v. Dialpad, Inc.*, No. 6:21-CV-00642-ADA, 2022 U.S. Dist. LEXIS 149866, at *4 (W.D. Tex. Aug. 22, 2022)

1

("Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.") (citations omitted). Defendant thus missteps when it argues that Immersion ignores "key limitations"—a misnomer since these purported "limitations" are found in the specification, not in the claims themselves—that Defendant seeks to shoehorn into the claim. Dkt. No. 56 at 4.

First, "control gesture" should be given its plain and ordinary meaning for the reasons detailed in Immersion's opening brief. Dkt. No. 48 at 3-7. The terms alone and in combination are easy to understand, and the plain meaning of the term is supported by the intrinsic record. *Id*.

Second, Defendant argues that the patentee acted as its own lexicographer because it used the phrase "as used herein" when describing "control gesture" in the specification. Dkt. No. 56 at 2. But the phrase "as used herein" does not automatically signal that the patentee acted as a lexicographer. *See, e.g.*, *ParkerVision, Inc. v. LG Elecs., Inc.*, 6:21-CV-00520-ADA, 2022 U.S. Dist. LEXIS 110168, at *24 (W.D. Tex. June 21, 2022) (patentee did not act as lexicographer despite appearance of "as used herein" in relevant portion of specification); *Modern Font Applications LLC v. Red Lobster Hospitality LLC*, 6:21-CV-470-ADA, 2022 U.S. Dist. LEXIS 38316, at *17 (W.D. Tex. March 4, 2022) (acknowledging that "as used herein" appeared in specification and informed meaning of disputed term, but holding that term should be given its plain and ordinary meaning). The cases cited by Defendant in its opening brief do not hold otherwise. *See, e.g.*, *Linear Tech. Corp. v. Int'l Trade Comm'n*, 566 F.3d 1049, 1054 (Fed. Cir. 2009) (applying definition used in specification without holding that "as used herein" necessarily indicates patentee acted as lexicographer); *Chevron U.S.A. Inc. v. Univ. of Wyoming Rsch. Corp.*, 978 F.3d 1361, 1364 (Fed. Cir. 2020) (deriving definition from specification without holding that "as used herein" necessarily indicates patentee acted as lexicographer); *Braintree Labs., Inc. v. Novel Labs., Inc.*, 749 F.3d 1349, 1356 (Fed. Cir. 2014)

2

(rejecting district court's modification of definition included in specification, without holding that "as used herein" necessarily indicates patentee acted as lexicographer).

Moreover, even if the Court finds that the use of "as used herein" in the specification in this instance signals that the patentee acted as a lexicographer and defined "control gesture," it does not follow that, as Defendant argues, an ***entire paragraph*** of text from the specification must be read into the claim. None of the cases relied on by Defendant support such a result, and Defendant fails to distinguish *Chevron* and *Cisco Systems v. Innovative Wireless Solutions, LLC*, No. 1:13-cv-00492-LY, 2015 U.S. Dist. LEXIS 2014, at *17-19 (W.D. Tex. Jan. 8, 2015). *Compare* Dkt. No. 48 at 6 *with* Dkt. No. 56 at 7-8. As to *Chevron*, Defendant concedes the key point: neither party sought inclusion of the entire "as used herein" passage into the claim construction, and thus there is no reason to derive from *Chevron* any principle that the Court must do so here. Dkt. No. 56 at 7. The fact that "its inclusion (or lack thereof) was not before the Federal Circuit" (*id*.) is immaterial, because what matters is that both parties recognized that "as used herein" is not a magic incantation that compels courts to sweep whatever follows into the claim. Likewise, as to *Cisco*, Defendant concedes that the court in that matter adopted a construction "entirely consistent with" the definitional language. Dkt. No. 56 at 8.

Here, Immersion maintains that the term "control gesture" should be given its plain and ordinary meaning. But if the Court believes that any further construction is necessary, Immersion's proposal is entirely consistent with the intrinsic evidence (including the portion that deals with a "manipulation," which as discussed immediately below Defendant ignores), and—in contrast to Defendant's proposed construction—it does not include superfluous exemplary language. *See, e.g.*, *Glob. Sessions LP v. Comerica Bank*, No. A-13-CA-691-SS, 2014 U.S. Dist. LEXIS 125271, at *14 (W.D. Tex. Sept. 8, 2014) ("It is not necessary to complicate the jury's task in this case with yet another defined phrase, particularly when that definition only repeats the explanation of the core concept introduced in the first column of the patent.").

3

Third, not only does Defendant seek to add numerous extraneous elements to the limitation via its own proposed construction by, among other things, importing an example stated in the negative into the claim, but its proposed construction *excludes* from "control gesture" a part of the plain meaning—i.e., the fact that it comprises a "manipulation." Defendant misinterprets the specification when it argues that manipulation is not part of the meaning of the term. Dkt. No. 56 at 4. Defendant argues that the specification indicates that a control gesture "may" include a manipulation. *Id*. But the specification makes clear that control gestures are a type of "input to the computer" and later provides non-limiting examples of the types of "manipulation" that control gestures can comprise. *See, e.g.*, '806 patent at 17:58-67. In other words, the "may" here indicates that control gestures may include various non-limiting types of manipulation, not that a control gesture may or may not be a manipulation. Indeed, the specification teaches that a control gesture is necessarily a form of user input—i.e., a manipulation. *Id*.

Defendant's related argument that the section of the specification explaining that control gestures are manipulations is not "definitional language" likewise misses the point. Dkt. No. 56 at 4. The specification's "definitional" language begins by stating that a "'control gesture' refers to a gesture made by a user." *Id*. at 5:7-8. Using "gesture" to explain a "control gesture" is circular, and a POSITA would appreciate that the specification's teaching that a control gesture comprises some form of input via user manipulation appropriately clarifies the meaning of the term in light of the intrinsic record. *Id*. at 17:58-67.

Finally, Defendant's attempt to refute Immersion's showing that the doctrine of claim differentiation counsels against adopting Defendant's proposed construction merely assumes what it must prove. *Compare* Dkt. No. 48 at 6 *with* Dkt. No. 56 at 6-7. Defendant cannot reasonably dispute that dependent claim 15 is narrower than independent claim 11 because it introduces the concept that the command input associated with the "control gesture" must be a "single, discrete command"—i.e., a

4

separate limitation that Defendant is trying to read into claim 11. Dkt. No. 48 at 6. Defendant opts instead to argue that claim differentiation cannot be used to broaden the scope of a claim, which may be true as a general proposition but in this instance hinges on accepting the disputed notion that the limitation introduced in claim 15 is definitionally a part of claim 11. Dkt. No. 56 at 7. Defendant's argument is thus circular, and the portions of the specification cited by Defendant merely confirm that both the independent and dependent claims of the '806 patent are supported by the specification.

Because Meta's construction would only serve to confuse the jury, the Court should apply the plain and ordinary meaning, clarified, to the extent necessary, as above by Immersion.

B.     **"confirmation haptic effect"** ('524 patent, claims 1, 11)

| **Plaintiff's Construction** | **Defendant's Revised Construction** |
|---|---|
| Plain and ordinary meaning<br><br>To the extent the Court believes that any further construction is necessary, the plain and ordinary meaning includes "one of multiple possible tactile feedback events for a single user interface element, customized based on context metadata, to confirm the interaction with the user interface element" | "a haptic ~~feedback~~ effect ~~that is generated in response to a user interaction with a user interface element, in order~~ used to confirm the interaction with the user interface element" |

This term requires no construction beyond a plain and ordinary meaning. Defendant does not even try to rebut the heavy presumption that claim terms carry their plain and ordinary meaning, nor does it identify either of the two exceptions to this rule—i.e., when patentees (1) act as their own lexicographer or (2) disavow the full scope of the claim term in the intrinsic record. Defendant even implicitly acknowledges that its proposed construction should be rejected, conceding that "[h]ad plaintiff proposed its alternative before the briefing, Defendant may have not included this term for construction." Dkt. No. 56 at 8.

Recognizing that its proposed construction was incorrect, Defendant revised it. Dkt. No. 56 at 8. But despite its revisions, Defendant's proposed construction of "confirmation haptic effect" continues to distort the plain meaning of "confirmation haptic effect" by ignoring surrounding claim

language and the teachings of the specification. *Compare* Dkt. No. 48 at 7-11 *with* Dkt. No. 56 at 8-9. The Court should give this term its plain and ordinary meaning. If the Court believes that any further construction is necessary, Immersion's explanation of the plain and ordinary meaning is consistent with the surrounding claim language and intrinsic evidence and should be adopted. Dkt. No. 48 at 7-11.

### C. "context metadata" ('524 patent, claims 1, 6, 11, 13)

| Plaintiff's Construction | Defendant's Revised Construction |
|---|---|
| Plain and ordinary meaning | "any data associated with <u>a context of</u> an interaction with the user interface element" |

This term requires no construction because the individual words and their combination can be easily understood by a jury, and because the claims themselves provide any necessary clarity by detailing what "context metadata" is. Dkt. No. 48 at 11-12.

Defendant's argument is premised on a misstatement of the law, ignoring established case law under which claim terms carry their plain and ordinary meaning unless the patentee has acted as a lexicographer or disavowed claim scope. Dkt. No. 48 at 1. Although Defendant accuses Immersion of "ignoring [*Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352 (Fed. Cir. 2016)] and its progeny," Dkt. No. 56 at 9, Defendant does not state (a) what *Indacon* represents, (b) why Defendant believes Immersion is ignoring it, nor (c) how it applies to the dispute over the meaning of "context metadata." Defendant merely cites back to its opening brief, in which Defendant cited *Indacon* for the proposition that "'context metadata' has no accepted plain and ordinary meaning, so must be limited to the scope of disclosures in the specification." Dkt. No. 33 at 7. But Defendant's argument that "context metadata" has "no accepted plain and ordinary meaning" is a fact question supported here only by attorney argument; the Court need not accept it without evidence, such as an appropriate expert declaration. *See Koninklijke KPN N.V. v. Samsung Elecs. Co., Ltd.*, No. 2:14-CV-1165-JRG *et seq.*, 2016 U.S. Dist. LEXIS 60689, at *60 (E.D. Tex. May 6, 2016) ("The threshold issue of whether a term is a coined term is an issue of fact and the Court finds that Defendants have not adequately demonstrated that this is a

6

coined term."); *see also Facebook, Inc. v. Blackberry Ltd.*, No. 4:18-cv-05434-JSW, 2019 U.S. Dist. LEXIS 215260, at *30-31 (N.D. Cal. Dec. 13, 2019) (considering competing expert declarations to determine whether disputed term was "coined term" that lacked ordinary meaning).

Moreover, even if the Court accepts that "context metadata" lacks an established meaning, courts have recognized that the absence of an established meaning "does not justify a narrow construction where the meaning may be ascertained from the constituent words." *Facebook*, 2019 U.S. Dist. LEXIS 215260 at *29, citing *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1372 (Fed. Cir. 2003) ("simply because a phrase as a whole lacks a common meaning does not compel a court to abandon its quest for a common meaning and disregard established meanings of the individual words"). Here, there is no reason to construe the term as Defendant proposes because the words—alone and in combination—have a clear meaning when read in light of the surrounding claim language. *See* Dkt. No. 48 at 11-12.

Because Defendant's proposed construction is unnecessary and unhelpful to the jury, the Court should reject it and give "context metadata" its plain and ordinary meaning.

**D.** **"haptic parameter" ('524 patent, claims 1, 2, 3, 7, 11, 12, 14)**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning | "a quantity of a haptic effect quality, such as magnitude, frequency, duration, amplitude (i.e., strength), waveform, or any other kind of quantifiable haptic parameter" |

This term requires no construction, as jurors can easily understand both the individual words "haptic" and "parameter," and their combination. Dkt. No. 48 at 13. Defendant's sole response is to insist that the term should be construed because the patentee allegedly acted as its own lexicographer and defined "haptic parameter" in the specification. Dkt. No. 56 at 10-11. But the patentee merely used a common term and stated its plain meaning; using a common term and explaining its plain meaning is not the same as acting as a lexicographer, because doing so does not indicate an intent to redefine the

7

term. *See Luminara Worldwide, LLC v. Liown Elecs. Co.*, 814 F.3d 1343, 1353 (Fed. Cir. 2016) ("To act as a lexicographer, a patentee must 'clearly set forth a definition of the disputed claim term' and 'clearly express an intent to redefine the term'") (emphasis added).

Here, there is no indication that the patentee sought to redefine "haptic parameter" in the specification, nor does Defendant point to any evidence in support of this argument. Instead, Defendant focuses on the word "is" in the phrase "a haptic parameter is" in the specification, citing *Sinorgchem Co., Shandong v. Int'l Trade Commission*, 511 F.3d 1132, 1136 (Fed. Cir. 2007) for the proposition that this indicates the patentee acted as a lexicographer and defined "haptic parameter." Dkt. No. 56 at 10-11. But *Sinorgchem* holds that the use of the word "is" merely "may" signify that the patentee set out a definition. *See Sinorgchem*, 511 F.3d at 1136. And *Sinorgchem* has been distinguished where, as here, the relevant term was not set off in quotation marks. *See Sun Microsystems, Inc. v. Network Appliance*, No. C-08-01641 EDL, 2009 U.S. Dist. LEXIS 48209, at *88 (N.D. Cal. May 29, 2009) ("Here, unlike in *Sinorgchem*, the patentee did not set off the term 'igroup' in quotation marks, which are an indicator of an explicit definition.").

Patentees routinely use and describe terms that have a plain meaning in their specifications, and doing so does not warrant a construction absent explicit intent to act as a lexicographer. Because there is no indication that that patentee here acted as its own lexicographer, "haptic parameter" should be given its plain meaning.

E.   "real space" ('217 patent, claim 1; '143 patent, claims 1, 8, 15) / "free space" ('298 patent, claims 1, 9, 17)

| Plaintiff's Construction | Defendant's Revised Construction |
|---|---|
| Plain and ordinary meaning<br><br>To the extent the Court believes that any further construction is necessary, the plain and ordinary meaning includes "the three-dimensional real world user surroundings" | "a~~n~~ three-dimensional area in the real world" |

"Real space" and "free space" should be given their plain and ordinary meaning, as clarified by Immersion, for the reasons identified in Immersion's opening brief. Dkt. No. 48 at 13-15. In its revised proposal, Defendant acknowledges that "real space" and "free space" must be three-dimensional. Dkt. No. 56 at 11. Although this brings the parties' proposals closer, Defendant argues that "user surroundings" is not part of the plain meaning, and argues that inserting the word "area" into the proposed construction would capture "portions of a user's surroundings." Dkt. No. 56 at 12. But there is no indication in the claim or specification that "real world" refers to "portions" of a user's surroundings, and in contrast to "surroundings"—which Defendant acknowledges appears in the specification (*id.*)—the intrinsic record never refers to an "area." Indeed, reading "area" or "portions" into the claim as Defendant argues would undercut the surrounding claim language, including for example claim language that requires the "manipulatable input device" to be "movable through real space"—not portions or an area of real space. *See, e.g.*, '217 patent, claim 1. Defendant's proposal is thus not supported by the intrinsic evidence and should be rejected.

F.      "augmented reality" ('222 patent, claim 10)

| Plaintiff's Construction | Defendant's Revised Construction |
|---|---|
| Plain and ordinary meaning<br><br>To the extent the Court believes that any further construction is necessary, the plain and ordinary meaning includes "an environment comprising a physical space of one or more physical objects and a virtual space of one or more virtual objects that are displayed coincident with or in association with one or more physical objects in the physical space" | "<u>one or more</u> physical objects in a real-world, physical space are concurrently displayed with <u>one or more</u> virtual objects in a virtual space" |

Because the patentee did not act as a lexicographer or disavow any claim scope, the term "augmented reality" should be given its plain and ordinary meaning—but if the Court believes that any further construction is necessary, it should adopt Immersion's proposal. Dkt. No. 48 at 16-19. Although Defendant's "compromise construction" adds the phrase "one or more" in two places, its proposal

9

remains fatally flawed because it *requires* virtual objects to be "concurrently" displayed with physical objects, which improperly limits the term to a single embodiment and ignores unrebutted intrinsic and extrinsic evidence that shows "augmented reality" has a broader meaning. Dkt. No. 48 at 16-19.

Immersion explained in its opening brief that the dispute over this term centers on whether, as Immersion maintains and the intrinsic record supports, the term covers physical objects that have been "augmented" in a virtual space and are thus displayed "coincident with or in association with" virtual objects, or whether, as Defendant argues, "augmented reality" requires physical and virtual objects to be "concurrently" displayed. Dkt. No. 48 at 16. In response, Defendant argues a strawman by misconstruing Immersion's position as being that "solely virtual objects" can comprise augmented reality. Dkt. No. 56 at 13 (emphasis removed). That is not Immersion's position. Instead, Immersion's position is that the plain meaning of "augmented reality" extends to virtual objects that augment physical objects.

This plain meaning of "augmented reality" is fully borne out by both independent claim 10 of the '222 patent and the teachings of the specification. For example, claim 10 includes the following limitation: "recognize at least one physical object in the physical space and *augment the at least one physical object with one or more virtual objects in the augmented reality space*." '222 patent, claim 10 (emphasis added). Claim 10 thus expressly contemplates that *virtual objects* that *augment* at least one *physical object* comprise augmented reality. Likewise, the specification repeatedly teaches that the augmented reality device can "augment" detected "physical objects" with "virtual objects":

> The wearable AR device may comprise, for example, an imaging device configured to image the physical space, one or more processors configured to generate the augmented reality space coincident with the physical space, recognize at least one physical object in the physical space and *augment the physical object with one or more virtual objects* in the AR space[.]

*See* '222 patent, 3:65-4:4 (emphasis added). The specification also teaches that a processor may be configured to "recognize at least one physical object in the physical space and *augment the at least one physical object with one or more virtual objects in the AR space*." *Id.* at 4:26-30 (emphasis

10

added). The specification further teaches that an "object generation module may be configured to ***generate virtual objects to augment recognized physical objects***." *Id.* at 4:51-53 (emphasis added). Each one of these examples—and there are several more cited in Immersion's opening brief (Dkt. No. 48 at 17-18)—show that "augmented reality" includes scenarios in which a virtual object augments a physical object.

In contrast, Defendant's proposed construction is irreconcilable with claim 10 and the teachings of the specification, because it requires the virtual and physical objects to be "concurrently" displayed, to the exclusion of the preferred embodiment. *See United States Well Servs. v. Halliburton Co.*, No. 6:21-CV-00367-ADA, 2022 U.S. Dist. LEXIS 50347, at *91 ("excluding this preferred embodiment from the claim scope is improper") (W.D. Tex. Jan. 17, 2022), citing *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1308 (Fed. Cir. 2003) ("A claim construction that excludes a preferred embodiment . . . is rarely, if ever correct and would require highly persuasive evidentiary support.") (citations omitted). That is, Defendant would construe "augmented reality" to require physical objects to appear ***without augmentation*** alongside virtual objects. Defendant arrives at this position by misreading a single use of the word "concurrent" in the background section of the specification in which the patentee ***is describing prior art systems***. *See* '222 patent, 1:22-32. Although such concurrent display of physical and virtual objects may also constitute augmented reality, to limit the term in this way would exclude not only several embodiments discussed in the specification, but would be contrary to the plain language of claim 10 itself. The Court should reject Defendant's effort to rewrite "augmented reality" and give the term its plain meaning.

G. **"chain" ('222 patent, claim 15)**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| "claim" | Undisputed |

The parties agree that "chain" should be corrected and replaced with "claim" in claim 15 of the '222 patent.

Date: January 19, 2023

Respectfully submitted,

/s/ *Stefan Szpajda*
Stefan Szpajda, WA Bar No. 50106
Cristofer I. Leffler, WA Bar No. 35020
David Schumann, CA Bar No. 223936
C. Maclain Wells, CA Bar No. 221609
Sam Kim, CA Bar No. 282582
Alexandra Fellowes, NY Bar No. 5015946
Palani P. Rathinasamy, CA Bar No. 269852
Cliff Win, Jr., CA Bar No. 270517
Folio Law Group PLLC
1200 Westlake Ave. N., Suite 809
Seattle, WA 98109
Tel: (206) 880-1802
Email:
    stefan@foliolaw.com
    cris.leffler@foliolaw.com
    david.schumann@foliolaw.com
    maclain@foliolaw.com
    sam.kim@foliolaw.com
    alexandra.fellowes@foliolaw.com
    palani@foliolaw.com
    cliff.win@foliolaw.com

Joseph M. Abraham, TX Bar No. 24088879
Timothy F. Dewberry, TX Bar No. 24090074
Folio Law Group PLLC
13492 Research Blvd., Suite 120, No. 177
Austin, TX 78750
Tel: (737) 234-0201
Email: joseph.abraham@foliolaw.com
      timothy.dewberry@foliolaw.com

*Attorneys for Immersion Corporation*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 19, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/*Stefan Szpajda*
Stefan Szpajda