## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

IMMERSION CORPORATION,
      *Plaintiff*

-vs-

META PLATFORMS, INC. f/k/a FACEBOOK, INC.,
      *Defendant*

§
§
§
§
§
§
§
§
§
§
§
§

**W-22-CV-00541-ADA**

### ORDER DENYING DEFENDANT'S MOTION TO TRANSFER

Before the Court is Defendant Meta Platforms, Inc's ("Meta's") Motion to Transfer Venue to the Northern District of California. ECF No. 20. Plaintiff Immersion Corporation. ("Immersion") opposes the motion. ECF No. 34. Meta replied to further support its motion. ECF No. 50. Immersion filed a sur-reply in response. ECF No. 69. The Court then had a hearing on the motion on January 23, 2023. After considering the parties' arguments, briefs, and the applicable law, the Court **DENIES** Meta's motion to transfer venue to the Northern District of California. Because both parties agree that the Austin Division is more convenient than the Waco Division, the Court **TRANFERS** this case to the Austin Division.

### I.      FACTUAL BACKGROUND

In its complaint, Immersion claims Meta infringed on U.S. Patent Nos. 8,469,806 ("the '806 patent"); 8,896,524 ("the '524 patent"); 9,727,217 ("the '217 patent"); 10,248,298 ("the '298 patent"); 10,269,222 ("the '222 patent"); and 10,664,143 ("the '143 patent") (collectively, "the Immersion patents"), which relate to haptics technology. ECF No. 1 at ¶ 1, 4, 29-52. Immersion, the owner of the Immersion patents, is a Delaware corporation with its principal place of business in Florida. *Id.* ¶ 5. Meta is a corporation organized under the laws of the state

1

of Delaware. *Id.* ¶ 6. Meta's headquarters are in California. ECF No. 20 at 3. Meta admits that it currently maintains a place of business in Austin, Texas within the Western District of Texas. ECF No. 20 at 6. According to Immersion, Meta sells AR/VR systems that facilitate "immersive experiences" using haptic feedback (which provides tactile sensations to users such as vibrations that mimic real-life forces). ECF No. 34 at 1-2. The claimed system includes much more than physical devices, and includes embedded software, integrated user interface devices, applications embedded via control software application programming interfaces (APIs), and third-party software which brings the entire virtual reality experience together. ECF No. 20 at 3-4; ECF No. 34 at 1-3. Immersion accuses Meta's virtual reality systems such as Meta Quest 2 and Quest Pro hardware as well as the games and applications that run on the Meta Quests. ECF No. 34 at 3. The Court will refer to these products collectively as the "accused products."

After answering Immersion's complaint, Meta filed this motion to transfer. ECF No. 20. Meta does not argue that the Western District of Texas ("WDTX") is an improper venue for this case; instead, it argues that the Northern District of California ("NDCA") is a more convenient forum, pointing to the location of potential witnesses, the location of relevant records, the availability of compulsory process, and the local interest in California. *Id.* at 9-15. Immersion contends that the case should remain in the WDTX, pointing to all the same factors, including Court Congestion, and noting the emphasis on relevant third parties. ECF No. 34 at 4-15.

## II.    LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . " *Id*. "Section 1404(a) is intended to place discretion in the

district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) (hereinafter "*Volkswagen II*"). If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (hereinafter "*Volkswagen I*") (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. While "clearly

3

more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show an individual factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## III.   DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the NDCA. Neither party disputes that venue could be proper in the NDCA. Meta operates a regular and established place of business in the Bay Area within the NDCA. ECF No. 20 at 3. This Court therefore finds that venue would have been proper in the NDCA had the suit originally been filed there. Thus, the Court now analyzes the private and public interest factors to determine whether the NDCA is a clearly more convenient forum than the WDTX.

### A.   The Private Interest Factors

#### i. The Cost of Attendance and Convenience for Willing Witnesses

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). According to Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in some cases where witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and

4

inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at * 4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than distance. *Id.* However, the Federal Circuit has also held that when willing witnesses will have to travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342. When analyzing this factor, the Court should consider all potential witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

According to Meta, the majority of its relevant witnesses are based in its NDCA and Seattle offices which would find NDCA more convenient. ECF No. 20 at 4-6. Meta claims that 7 of the named inventors appear to reside in or near NDCA. *Id.* at 2. Meta admits that it has employees in Austin, but disputes the relevance of any employees located there. *Id.* at 5-6. Immersion argues that both it and Meta have relevant employees in Austin and the Dallas area that would find WDTX more convenient. ECF No. 34 at 10-13. Immersion argues that it has inventors (who are no longer employees, but it alleges are willing witnesses) located across the United States and that would find WDTX more convenient than NDCA. ECF No. 34 at 9. Meta argues that those employees are not actually willing witnesses. ECF No. 50 at 3. Finally, Immersion argues that it has employees located in the U.S. and abroad that would find WDTX more convenient than NDCA. ECF No. 34 at 10. The Court will deal with each group of employees in turn.

1. <u>Meta and Immersion's Employees in the NDCA</u>

According to Meta, most of the employees with relevant knowledge about the design, development, marketing, and finances for the Accused Products are in the NDCA and Washington. ECF No. 20 at 3. Meta and Immersion both agree that Immersion's ███████████ ███████████████████████████████████████████ and would find NDCA more convenient than WDTX. ECF No. 20 at 10. ECF No. 34 at 10 n5. Meta has identified 11 relevant employees in NDCA. ECF No. 20 at 4. Immersion does not dispute the relevance of the 11 employees in NDCA (███████████████████████████████████████ ██████████████████), but shows that there are more Immersion and Meta employees in WDTX and Dallas who would find the WDTX more convenient. ECF No. 34 at 9-13. Meta also argues that because the Reality Labs teams are based in NDCA, not WDTX, if considered, they would find NDCA more convenient. ECF No. 20 at 14.

Meta identifies 7 specific employees in NDCA including ██████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████. ECF No. 20 at 4. Meta identifies 3 further relevant finance employees in NDCA including ████████████████████████████████████████ ███████████████████████████████████████████████████ ██████. ECF No. 20 at 4-5, 12; ECF No 51 ¶ 8. Meta argues that the majority of the teams that these individuals are on are in California (including employees in the Reality Labs vertical), and that the 6 individuals in Texas on those teams do not have "unique knowledge". *Id.* at 5-6.

Immersion argues that some of those 6 individuals may have relevant information, and those employees will be discussed below when looking at Meta and Immersion's employees in Texas.

Meta is incorrect that the Court should grant weight to the fact that there are more Reality Lab employees in NDCA than WDTX. Meta's citation to *AlmondNet v. Meta Platforms, Inc.*, No. 6:21-cv-00896-ADA, Dkt. No. 87 (W.D. Tex. Nov. 29, 2022) misconstrues the Court's holding, on page 14, focusing on the importance of 4 key witnesses over "a few" potentially relevant employees in WDTX, not the overall numbers of employees in different places. As specified by the Federal Circuit, the Court may exclude employees that parties are "not at all specific about what testimony it expected to elicit" from an employee or even if that employee "possesses knowledge of the facts relevant to this infringement action". *In re Google LLC*, No. 2021-170, 2021 WL 4427899, at *7 (Fed. Cir. Sept. 27, 2021). Therefore, the Court does not consider these employees in the analysis, because any convenience is purely speculative for employees other than the specifically identified employees that may have relevant testimony. Put simply, the most relevant consideration is where individuals who would likely testify are located.

The Court finds that the 12 employees specifically pointed to by Meta and Immersion in the NDCA might be relevant at trial (███████████████), and would find NDCA more convenient than WDTX. Thus, the Court finds the presence of these witnesses in California weighs in favor of transfer.

### 2. Meta's Employees in Seattle, WA

Meta argues that 5 relevant employees work out of Seattle, WA, and that NDCA is more convenient than WDTX for those employees. The relevant employees include ████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ ECF No.
20 at 4, 12-13. Immersion does not dispute that these employees are relevant. Thus, the Court finds the presence of these witnesses in Seattle, WA weighs in favor of transfer. *Gentex v. Meta Platforms*, No. 21-CV-00755-ADA, 2022 WL 2654986, at *7 (W.D. Tex. July 8, 2022) (witnesses based in Washington State would find testifying in NDCA more convenient, weighing in favor of transfer).

### 3. Meta and Immersion's Employees in Texas

Immersion identifies 23 Meta employees located in Austin and Dallas that it alleges have relevant knowledge of product design, operation, finances, and marketing. ECF No. 34 at 10-13. Meta admits that it does have 6 employees on the relevant teams in Austin and Dallas, TX (and both locations would find WDTX more convenient for witnesses), but disputes that they have relevant information. ECF No. 20 at 5. Immersion identifies their current CTO Dr. Muthusamy (who lives in ███████) as an individual with relevant information about the accused patents and technologies. ECF No 34 at 10. Meta argues that "Dr. Muthusamy's tenure as CTO has been, at best, ephemeral, starting in April 2022". ECF No. 50 at 5. However, regardless of the length of Mr. Muthusamy's tenure, he likely has relevant information about Immersion's operations and would find WDTX more convenient than NDCA.

Meta disputes that any witnesses in Texas have "unique knowledge" to add to other team members. ECF No. 20 at 5. ██████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████████████████████████████ ECF No. 34 at 13.

And Meta claims that it ███████████████████████████████████████████████ ███████████████. ECF No. 34 at 10. Therefore, the Court finds that each of the employees identified by Meta and Immersion must be considered, and that NDCA and Washington witnesses are not uniquely relevant as compared to Meta employees identified by Immersion, particularly given Meta's acknowledgment that ██████████████████████████████████████ ███████████████████████.

First, the Court notes that Meta contradicts itself multiple times on the relevance of employees who are managed by other employees. Sometimes, they indicate that the manager has more knowledge and therefore the team members should be discounted. ECF No. 20 at 5. But, in other instances, they try to argue that managers have less knowledge and are not relevant. ECF No. 50 at 2, n3. The Court notes that it does its best to consider what information that each employee might have as described by parties rather than relying on generalized assertions based on corporate structure.

In addition, Meta critiques the usage of ████████████████████████████ and titles and LinkedIn descriptions, that ████████████████████████████████████████ ███████████████. ECF No. 50 at 2-3. Yet the ████████████████ are helpful in identifying employees' experience/knowledge as well as their interests, and is of probative value when determining what knowledge employees might possess, even if ██████████████████████.

Immersion points to John Carmack who was the CTO for Oculus before acquisition and resides in Dallas. ECF No. 34 at 10. Immersion argues that Carmack has relevant knowledge of the conception, design, and development of accused products that overlap with Oculus technology. *Id.* Mr. Carmack is now no longer is employed at Meta and issued public statements

criticizing Meta and is properly considered a third party, under the unwilling witness factor. ECF No. 65 at 1.

Meta points to ███████████████████ who reside in the ███████████ areas respectively. ECF No 20 at 5; ECF No. 21 ¶ 18. That ███████████ is not relevant to our inquiry is directly contradicted in the Woodhouse Declaration. As for ███████████████ ████████████████████████████████████ ECF No. 21 ¶ 18. This directly shows that he has relevant technical knowledge, and it is unlikely that he has no unique knowledge, even if he does sometimes ████████████████ as stated in the Woodhouse Declaration. On the other hand, ███████████ likely has no relevant information because ████████████████████████████████████████ ████████████████████████ ECF No 21 ¶ 18.

Immersion further identifies multiple Meta employees including ███████████ ████████████ who has authored articles such as ████████████ ████████████. ECF No. 34 at 11. As described further in the Woodhouse Declaration, he ████████████████████████████████ ███████ ECF No. 21 ¶ 29. Meta attempts to downplay ████████ relevance by stating that Plaintiff doesn't appear to be limiting the case to "look-and-feel" and that he has a large team. ECF No. 20 at 13-14. To the contrary, design and user experience of VR products is specifically important to the Accused Products at issue, specifically haptics and the related systems for VR technologies. Therefore, the Court finds that ████████ has potentially relevant information about the Accused Products.

████████████████████████████████
████████████████████████████████████. ECF No. 34 at 11;

ECF No. 21 ¶ 28. As described in the Woodhouse Declaration, ███████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████ ECF No. 21 ¶ 28. Meta suggests

that ████████ team is primarily based in NDCA. ECF No. 20 at 14. The location of ██

███████ team is not relevant, rather ███████ knowledge is. The Court finds that ██████

has potentially relevant technical information about the Accused Products and haptics within

them.

███████████████████████████████████████████

████████████████████████████████████████ ECF No. 34 at 11. Meta

interview notes confirm ████████████████████████████████

████████████████████████████████████████████████

██████ ECF No. 51-1 at 3. ██████████████████████████████

he has relevant information about the Accused Products and technology.

███████████████████████████████████████████

████████████████████████████████████████████

████████████ ECF No. 34 at 11. Meta does not specifically dispute the relevance of ██

████ (other than the general criticisms leveled at all individuals identified by Immersion). The

Court finds that ████████ likely has relevant technical information about development on the

Accused Products.

███████████████████████████████████████████

██████████████████████████████████████ ECF No. 34 at 13. Meta

argues that they interviewed ███████████████████████████████

ECF No. 50 at 2, n3. But, Immersion notes that ████████████████████████████



██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████ ECF No. 34 at 11. In addition, ███████

██████████████████████████████████████████████████████

████████████████████████████████████ ECF No. 69. The Court agrees with

Immersion that ██████ is potentially relevant and has information about general sourcing for the

Accused Products which would include haptics, along with other components that the claims

might implicate.

████████████████████████████████████████████████

████████████████████████████████████████████████ ECF

No. 34 at 11. Interview notes from Meta confirm his relevance showing that he ███████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████. ECF No 51-1 at 11. His experience ██████████████████████████

█████████████████ makes him a relevant technical witness.

████████████████████████████████████████████

████████████████████████████████████████████████ ECF

No. 34 at 11. As noted in interview notes from Meta, ████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████ ECF 51-1 at 6. The testimony

confirms that ████████████ has relevant information about the Accused Products, development

for them, and business information related to that development.



███████████████████████████████. Based on interview notes from Meta, █████████████████████████████████████████████████████ █████████████████████ (ECF No. 51-1 at 14). █████████████ for the Accused Products is relevant financial information.

█████████████████████████████████████████████ █████████████████████████ ECF No 34 at 12. Based on interview notes from Meta, █ ██████████████████████████████████████████████████ ████████████████ (ECF No 51-1 at 16-17). The Court finds █████████ relevant because he works directly with marketing, sales, and customer sentiment for the Accused Products.

███████████████████████████████████ ECF No. 34 at 12. Meta does not dispute that ██████████ has relevant information (other than in the general sense), and the Court finds that ██████████ for the Accused Product likely has relevant information about the development of the accused products.

█████████████████████████████████████████████ ████████████████████████████ ECF No. 34 at 12. Interview notes from Meta confirm █ importance as a potential witness. They specify that ███████████████████████ █████████████████████████████████████████████████████ █████████████████████████████████████████ ECF No. 51-1 at 2. The Court finds that ██████████ is a relevant witness because he works with the █████████ ███████████████████████████████████████████. █████████████████████████████████████████████████ █████████ ECF No. 34 at 12. In addition, he is a member of ██████████████████ ████████████████████████████████████████████. *Id.* Meta does not

specifically challenge the relevance of ███████ other than to vaguely state the titles and ███████████████████ cannot by itself allege relevance, and state that individuals are probably more relevant. ECF No 50 at 1-2. That said, Meta did not interview ███████ and does not provide the Court any specific reason to discount his relevance (other than vague assertions that other Meta employees are more relevant). Because ████████████████████ ██████████████, he likely has relevant information about engineering and design of the functionality of the VR products.



. ECF No. 51-1 at 5. In addition, he thinks he has done work on the ████████████████████████ ████████████████. *Id.* The Court finds that ██████ is relevant and likely has engineering knowledge regarding first party studios, its programming tools, and using haptics in Meta VR products.

ECF No. 34 at 11. In addition, he has access to ████████. *Id.* Yet Meta did not interview ██ ██ and does not provide the Court any specific reason to discount his relevance (other than vague assertions that other Meta employees are more relevant). The Court finds that ██████ is relevant and likely has engineering knowledge about the product management of the Accused Products and technologies.



█████████ ECF No. 34 at 12. Meta did not interview ██ ██ and does not provide the Court any specific reason to discount his relevance (other than vague assertions that other Meta employees are more relevant). The Court finds that █████ likely has relevant information about finances, strategy, and operation of the Accused Products.

██████████ ECF No. 34 at 12. Meta did not interview █████ and does not provide the Court any specific reason to discount his relevance (other than vague assertions that other Meta employees are more relevant). The Court finds that █████ likely has relevant ██████████ about the Accused Products.

██ *Id.* Meta did not interview █████ and does not provide the Court any specific reason to discount his relevance (other than vague assertions that other Meta employees are more relevant). The Court finds that █████ likely has relevant information about the Accused Products and their design/usage, specifically with regard to ██████████████.

██████████. ECF No. 34 at 12. Meta did not interview █████ and does not provide the Court any specific reason to discount

his relevance (other than vague assertions that other Meta employees are more relevant). The Court finds that ███████ likely has relevant information about ████████████████ ████████████.



ECF No. 34 at 12. Meta did not interview ███████ and does not provide the Court any specific reason to discount his relevance (other than vague assertions that other Meta employees are more relevant). The Court finds that ███████ likely has relevant information about design and technology of the Accused Products in relation to user experience.

████████████████████████████████████████

████████████████████████████ ECF No. 34 at 11. Meta does not dispute the relevance of ███████, but rather argues that ███████ resides in ███████ not Austin. ECF No. 50 at 1; ECF No. 52-3; ECF No. 51 ¶ 5. Although ███ ███████ workplace might be ███████ (1) ████████████████████ ███, (2) his social media show that he voted in person in Austin in October 2022, and (3) Travis County tax records show ███████ "homestead" exemption that reduces the taxable value of his Austin residence. ECF No 69 at 2. The Court finds that based on the overwhelming evidence of ███████ presence in Austin, he is likely has a home there (given his homestead exemption), has recently voted there, he undisputedly has relevant technical information related to the VR technologies and developing APIs, and that WDTX would likely be convenient for him as a witness given his residence in Austin, Texas.

Immersion also identifies ███████████████████████████████

███████████████████████████████████████████████████████

███████████████. ECF No. 34 at 12. Yet Meta interviewed ████████ and revealed that ██

███████████████████████████████████████████████████████

███████████████████████ ECF No. 51-4 at 44. Although that assertion is

suspect (or at least incomplete) given ███████████████████████████

███████████████████████████████████████████████████████

the Court cannot confirm ███████ potential relevance and he therefore does not weigh

against transfer.

In short, the Court finds that there are 22 individuals with relevant information in Texas.

They include: ███████████, ███████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████ The Court also concludes that the WDTX is a more convenient forum than the

NDCA for Meta and Immersion's Austin and Dallas-based employees. The Austin and Dallas-

based employees would only have to make a short drive to attend trial in Waco. Yet if the case

were transferred to the NDCA, Meta's Austin-based employees would have to fly to another

state and "be away from their homes and work for an extended period of time." *In re Google,*

*LLC*, 2021 WL 4427899, at * 4. The Court finds that the presence of relevant Meta and

Immersion employees in the WDTX weighs against transfer.

### 4. Immersions Third-Party Willing Witness Inventors

Immersion argues that ███████████████████████████████████

███████ that (1) would be willing to come and testify in WDTX and (2) would find WDTX



more convenient than NDCA. ECF No. 34 at 9. Immersion argues that they are particularly

important because they are ███████████████████ and ███████████████████

███████████████ Meta responds that (1) only Immersion could

require them to testify at trial (bringing into doubt that they are willing) and (2) that they may not

be the most relevant to the invention story in comparison to other inventors. ECF No. 50 at 3.

The Court notes that first, ████████ does not weigh in analysis of this factor. Under

Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100

miles, the inconvenience to witnesses increases in direct relationship to the additional distance

they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. Under this 100-mile

rule, the presence of willing witnesses in ██████ would weigh against transfer because these

witnesses are closer to Waco than the NDCA. But the Federal Circuit has stated that courts

should not apply the rule "rigidly" in cases where witnesses would be required to travel a

significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342

(discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he

inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them

to travel to a distant forum and to be away from their homes and work for an extended period of

time." *In re Google, LLC*, No. 2021- 170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021).

Thus, the cost and inconvenience posed by travelling to a distance forum is similar for both

forums, so ██████ does not weigh against transfer.

In contrast, █████████ lives in ████████████████████. ██████████

is an equivalent distance from Waco as Seattle is from NDCA. Therefore, the Court finds that

Waco would be more convenient than NDCA under the same logic that NDCA is more

convenient for Seattle based employees.

Contrary to Meta's assertion, Immersion has provided ample evidence that ███████████ is a willing witness. Immersion obtained a signed, affidavit that ██████████████████ ████████████████████████████ ECF No. 37 ¶ 11. Although ███████████ may not be required by contract to testify by Meta, ████████████ did not qualify his willingness to testify based on the party which party called him. ECF No. 50 at 3; ECF No. 37 ¶ 11. In addition, ███████████'s testimony is unequivocally important and relevant. As stated in his affidavit, he ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████. ECF No. 37 ¶¶ 4-7. All these facts taken with the fact that he is a ███████ ███████████████████████████ show that he has very relevant information about the technology, Immersion product/invention design, and patent strategy. ████████████'s testimony is highly relevant.

Immersion argues that three other inventors, ██████████████████████████ ████████ are based in ██████████ and would also find WDTX more convenient than NDCA. ECF No. 34 at 9. The Court discounts their testimony for the same reason that ████████████'s testimony was discounted, because ██████████████████ are similarly situated.

For the reasons above, the Court finds that ████████████'s presence weighs against the transfer to the NDCA.

### 5. Immersion Employees Internationally and Throughout the United States

Immersion points to its employees ████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████ And in ███████████████████████

███████████████████████████████

███████████████████████

To the extent that any relevant Immersion employee is based outside the United States, neither the NDCA nor the WDTX is a convenient forum. Immersion's international employees would have to travel a significant distance to either venue and would incur travel, lodging, and related costs in both locations. Even if one venue may be slightly more convenient than the other for Immersion's international employees, this difference should not weigh heavily in the analysis of this factor. *In re Apple*, 979 F.3d at 1342. For similar reasons, to discounting the presence of ████████, the Court also discounts Immersion employees in Florida, New Jersey, and New York. The Court finds that the presence of any relevant Immersion employees outside of and in the United States far from NDCA and WDTX does not affect the outcome of this factor.

### 6. Conclusion

The Court finds this factor weighs slightly against transfer. Meta has identified 17 individuals would find NDCA more convenient, while Immersion has identified 23 (including ████████). Immersion's other U.S. based employees and International employees would not find either forum convenient. The Court concludes that WDTX is slightly more convenient for willing witnesses.

### ii. *The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are

kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d at 1345).

The Court acknowledges that the Fifth Circuit's decision in *In re Planned Parenthood* shows a shift in the analysis of this factor. The Fifth Circuit has recently agreed with a district court that concluded that this factor is neutral because electronic evidence is equally accessible in either forum. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). The Fifth Circuit held that "[t]he location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature." *Id.* But the Federal Circuit has held that it is an error to conclude this factor is neutral because electronic documents are easily accessible in both forums. *In re Apple, Inc.*, No., 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022). To the extent that these two holdings can be reconciled, the Court concludes that the location of physical evidence is more important to this analysis than the location of where electronic documents are typically accessed. Even so, the Court still considers the location of document custodians of electronic documents in its analysis of this factor. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

Here, neither party alleges that physical evidence is in the NDCA or WDTX (other than Immersion documents which are discussed below). Therefore, the Court moves to electronic evidence. According to Meta, the NDCA is a more convenient forum because its sources of proof are more easily accessible there. ECF No. 20 at 9. Meta explains that "the Accused Instrumentalities were primarily designed and developed in Northern California and Seattle" and has "not identified information suggesting that any of the Accused Instrumentalities were designed or developed in the Waco Division of WDTX." ECF No. 21 ¶ 21. Meta claims that

 ECF No. 20 at 9; ECF No. 21 ¶¶ 19, 22. Further, Meta argues that its ████████████████████████████████████████████. ECF No. 20 at 9; ECF No. 21 ¶¶ 23, 25. Immersion argues that infringing functionality ██████████████████████████████████████ ECF No. 34 at 4-5. And the Court does not give weight to Meta's assertion that ████████████████████████████████ ████████ Indeed, Meta's own declarant has admitted that ████████████████████ ████████████████████████████ ECF No. 40-1 at 66:8-21, 69:2-21. Meta even identifies ████████████████████████████████ ████████████████████████ ECF No. 21 ¶ 24. Immersion indicates that in Meta's declarants' deposition "for other Meta documents, Meta employees maintain them in ████████████ such as █████████████████████████████." ECF No. 34 at 5; ECF No. 40-1 at 35:5-14, 35:25-36:6, 39:1-13, 39:23-40:5, 40:15-42:18. This indicates that the location of such electronic information is somewhat location agnostic, especially since Meta makes no assertions about physical evidence.

More importantly, as discussed above, both Meta and Immersion have identified relevant employees in the NDCA and the WDTX. *See supra* Section III(A)(i). The Court believes it is likely that these employees are custodians of the relevant electronic documents. *See In re Google LLC*, No. 2021-178, 2021 WL 5292267, *2 (Fed. Cir. Nov. 15, 2021) (holding that it is an error to not "also consider[] the location of document custodians and the location where documents are created and maintained, which may bear on the ease of retrieval"). The Court concludes that this factor is neutral because relevant Meta employees likely create and maintain relevant electronic documents in both forums, and there is no physical evidence in either forum.

In terms of Immersion's sources of proof, Meta argues that Immersion seeks to create connections with Waco by transporting its physical documents to Waco for the purpose of litigation. ECF No. 20 at 10-11. Immersion responds that it ██████████████████ ████████████████████████████████████████████████████████████. ECF No. 34 at 5-6. The Court agrees that it seems that Immersion moved the documents specifically for litigation purposes (by ████████████████████████████████), and could be viewed as "recent, ephemeral, and an artifact of litigation". *In re Zimmer Holdings*, 609 F.3d 1378, 1381 (Fed. Cir. 2010). Therefore, the Court gives no weight in the transfer analysis.

Because relevant documents are likely located in both the NDCA and the WDTX, the Court finds that this factor is neutral.

### iii. The Availability of Compulsory Process to Secure the Attendance of Witnesses

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech*, 566 F.3d at 1345). The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018). However, the Fifth Circuit has clarified that "the availability of the compulsory process 'receives

less weight when it has not been alleged or shown that any witness would be unwilling to testify.'" *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th at 630−31 (quoting *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488 (6th Cir. 2016)).

Meta argues that this weighs in favor of transfer to NDCA because a minority of the inventors of Immersions patents reside in CA and would find NDCA more convenient. ECF No. 20 at 2, 11. In addition, 10 former Immersion employees might be relevant prior art witnesses that live in NDCA. ECF No. 20 at 2, 11. Meta argues that Immersion licensees including Apple, Google, Fitbit, and Sony Interactive, Epic Games, Unity Software, maker of the Unity platform that works with the accused Unity integration, and several game studios that make content for the Quest 2 product are in NDCA. ECF No. 20 at 7-8, 11.

Immersion argues that all inventors are not shown to be unwilling  Immersion responds that third party suppliers of haptic devices and drivers have offices in WDTX and Dallas subject to compulsory process including ███████ (specifically identifying ██████████ whose experience includes "Haptics: pressure, vibrations, bumps and buzzes"), █████████ (specifically identifying ████████, who "develop[s], support[s] and market[s] haptic and high-voltage products including haptics"), and ████████████ (specifically identifying █████████, a Haptics Strategic Marketing Manager). ECF No. 34 at 7; ECF No. 39 ¶¶ 14-19. Further Immersion cites Austin developers including Mighty Coconut (including founder Lucas Martell) and Owlchemy Labs (including CEO Devin Reimer), which were identified in its preliminary infringement contentions. ECF No. 34 at 7. Immersion also claims Unity and Unreal employees may be relevant and are located within Texas (which Meta omitted mention of these offices). ECF No.

34 at 8. Immersion argues that Meta does not identify *why* the creators it pointed to are relevant (or even if they incorporate haptics) because they were not included in Immersion's PICs (including Survios, ILMxLAB, and Electronic Arts), and suggests that those developers have Texas offices. As to licensees, Immersion argues that there is only speculation that Apple, Microsoft, Sony, Google, Fitbit, and Samsung are Immersion licensees, but does not identify relevant witnesses. *Id*. It notes that even if they are relevant, all identified licensees have offices in WDTX subject to process. ECF No. 34 at 8. Immersion also points to Meta licenses with WDTX based companies. *Id.*

Meta responds that ███████████████████████████████████████████ █████████ so neither third party is relevant. ECF No. 50 at 3; ECF No. 71 ¶ 7. ███ also has offices and employees in NDCA, which are subject to process there. ECF No. 50 at 3. ██████ is not based in Texas and has employees and offices in NDCA. *Id.* Meta argues that citations to Immersion's developer ecosystem are just consumers, which are in WDTX, NDCA, and worldwide. *Id.* at 4. Finally, Meta argues that the licenses for ████████████████████████ were signed by individuals in NDCA what would be relevant to damages in the instant case. *Id.* ECF No. 52 ¶ 17.

In reply, Immersion argues that although Meta identifies Unity/Epic personnel, they do not specifically identify individuals with relevant information. ECF No. 69 at 1. It argues that ██ ██████████████████████████████████████████████████████████████ █████████████████████████████████ is relevant to damages and infringement (and points to many ███ employees). *Id.* Immersion also points out Meta only generally points to █████████ employees while not identifying any specific employees with knowledge of haptics, VR, or Meta. *Id.* It states that ███████████ is relevant because Meta is ██████████



████████████████████████████████████████████████. *Id.* Finally, it notes that other Courts routinely have parties ██████████████████████████████ invoke those provisions to force employees to testify. ECF No. 69 at 2. *See Minebea Co. v. Papst*, 370 F. Supp. 2d 302, 308-309 (D.D.C. 2005) ("Papst has the ability to compel them to appear for testimony at trial and should have had the ability to make them available in the United States for deposition testimony").

For the Immersion inventors named on the asserted patents, the Court recognizes that the

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████ But the Court may invoke those agreements to require former employees to testify. *Minebea Co. v. Papst*, 370 F. Supp. 2d 302, 308-309 (D.D.C. 2005) ("Papst has the ability to compel them to appear for testimony at trial and should have had the ability to make them available in the United States for deposition testimony"); *Boston Sci. Corp. v. Nevro Corp.*, No. 16-1163-CFC-CJB, 2021 U.S. Dist. LEXIS 98218, at *5-6 (D. Del. May 18, 2021). Although both cases specifically involve deposition testimony, the agreement at issue specifies "other legal proceedings" and the enforcement of applicable patents, both would be a proper basis for compelling the inventors testimony if Meta required it. Therefore, compulsory process would not be required to obtain their testimony. If the agreements could not be invoked, they would properly fall under the compulsory process factor and would weigh in favor of transfer.

Regarding the Immersion prior art witnesses, Immersion states that they are ████████ ██████████████████████████████████████████ That said, they are not inventors on the

same patents, and Immersion doesn't ████████████████████████████████
████████████████████████████████████████████████████████████████

Therefore, the prior art witnesses properly fall under the compulsory process factor and weigh in favor of transfer.

The Court finds that ██████████████ are not relevant third parties. Both of them do not supply haptics chips to the Accused Products. ██████████████████ is likely a relevant third-party because they ████████████████████████████████. In addition, Immersion specifically identifies ██████████████, a Haptics Strategic Marketing Manager, who likely has relevant information about the Accused Products and haptics functionality. Meta's general citations the ██████████████ employees are unavailing, given that there is no evidence the identified employees have knowledge of knowledge of haptics, VR, or Meta. ████████ weighs slightly against transfer as a relevant third party subject to compulsory process.

The third-party developers who create content (including Unity and Epic Games) not weigh for or against transfer. The Court agrees with Meta that there are third party developers all around the world who could have potentially relevant employees (and does list some employees in exhibits but does not analysis of why they are relevant). Although Immersion points to specific employees at a few Austin based developers, they do not explain the relevant information that they hope to obtain from those individuals or why those developers are uniquely relevant. Therefore, the Court finds these third parties neutral in considering the availability of compulsory process because relevant content creators are in NDCA and WDTX and the lack of specific identification of employees who might testify.

Immersion's licensees likely favor transfer. Meta specifically identifies licenses for ██████████████████████████ that were signed by individuals in NDCA, and the

licenses/testimony would be relevant to damages in this case because the third parties licensed the patents at issue. ECF No. 50 at 4; ECF No. 52 ¶ 17. Those employees are subject to process in NDCA and would likely weigh slightly in favor of transfer.

Immersion also points to John Carmack, and as discussed above in Section III(A)(i)(3), he is relevant and unwilling (given his animosity and statements against Meta), and would weigh against transfer.

The Court concludes that the compulsory process factor weighs slightly in favor of transfer. All potentially relevant third parties that have been identified are likely within the reach NDCAs subpoena power, including relevant inventor, prior art witnesses, and Immersion licensees. On the other side, ███████████ and John Carmack are subject to this Court's subpoena power. In any event, the Court notes that neither party has alleged or shown that any of these witnesses are unwilling (other than potentially John Carmack). ECF No. 20 at 2, 11; ECF No. 34 at 7-9; ECF No. 50 at 2-4. Thus, under the Fifth Circuit's recent guidance, even if this factor were to favor or disfavor transfer, the weight of this factor is diminished. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th at 630−31.

### iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious and Inexpensive

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing

similar services, [the Federal Circuit] cannot say the trial court clearly [abuses] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010). However,the Federal Circuit has suggested that it is an error to determine that this factor strongly disfavors transfer based primarily on co-pending litigation with pending motions to transfer. *In re Google Inc.*, No. 2017-107, 2017 WL 977038, at *2 (Fed. Cir. Feb. 23, 2017).

Meta argues that this factor is neutral because the patents have not been previously litigated and there are no co-pending suits. ECF No. 20 at 14; ECF No. 50 at 5. Immersion responds that the costs of litigating this case in the NDCA will be substantially more than in the district for everyone (not just willing witnesses). ECF No. 34 at 14. Meta argues in its reply that any costs will balance given the number of witnesses in NDCA, and that the factor is neutral. ECF No. 50 at 5.

The relevant inquiry under this factor is whether the circumstances in either the forum would make trial of the matter easier, more expeditious, or less expensive. *Volkswagen II*, 545 F.3d at 314.The Court notes that first, the patents have not been previously litigated and there are no co-pending suits. In addition, the costs of litigating this case in the NDCA will be substantially more than in the district for everyone are speculative and without more, the Court cannot make a determination regarding if it would make trial less expensive. The Court determines that this factor is Neutral.

## B. The Public Interest Factors

### i. *Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It considers the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative"

factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.* However, as confirmed by the 5th Circuit district courts are "better placed" to determine docket congestion than other courts. *In re Planned Parenthood*, 52 F.4th 625, 631 (5th Cir. 2022); *In re Google*, 58 F.4th 1379, 1383 (Fed. Cir. 2023).

Meta argues that this factor is neutral because average case load per judge and time to trial are similar between the NDCA and WDTX, even though it recognizes that the time to trial is more than half a year shorter in the WDTX rather than the NDCA. ECF No. 20 at 14−15. In response, Immersion argues that this factor weighs against transfer because the Waco Division of the WDTX brings cases to trial two years faster than the NDCA. ECF No. 34 at 14.

To start, the Court notes that the Federal Circuit recently concluded that this factor should not weigh against transfer when the plaintiff "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution." *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). Here, both parties recognize that Immersion has been operating since 1993. ECF No. 20 at 1; ECF No. 34 at 2. Further over its history, Immersion has "developed and licensed haptic products and IP across diverse applications, including gaming systems, medical devices, automobiles, touchscreens, and mobile devices." ECF No. 34 at 2. It has developed its own software, and the technology it developed is used in over three billion devices worldwide. ECF No. 34 at 2. Unlike Jawbone in *In re Google,* there are no predecessor owners of Immersion's patents, and it is/was engaged in product competition in the marketplace. While Immersion has shrunk from a peak of 184 employees in 2009 to 21 employees today, this is simply evidence of the "urgency to case

resolution and give some significance to the time-to-trial difference". ECF No. 34 at 2; *In re Google LLC*, 58 F.4th at 1383.

The Court concludes that this factor weighs at least slightly against transfer. "[T]he speed with which a case can come to trial and be resolved" is a consideration under this factor. *In re Genentech, Inc.*, 566 F.3d 1338 at 1347. Despite this Court's large docket, it has proven to resolve cases expeditiously—this Court has consistently been able to bring patent cases to trial within two years after filing a complaint.[1] The Federal Circuit has emphasized the importance of rapid disposition of patent cases. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). It has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). The data available to the Court indicates that the WDTX would likely be able to resolve this dispute more quickly than the NDCA.

The Court finds this factor weighs at least slightly against transfer.

### ii. Local Interest in Having Localized Interests Decided at Home

---

[1] *See, e.g.*, *MV3 Partners v. Roku, Inc.*, 6:18-cv-00308-ADA (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC, v. NCR Corp.*, No. 6:19-cv-00513-ADA (W.D. Tex., filed August 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00057-ADA (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. v. Amazon.Com Inc.*, No. 6:21-cv-00511-ADA (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus Tech. LLC v. Google LLC*, 6:20-cv-00101-ADA (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6:20-cv-00018-ADA (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare LLC v. Google LLC*, 6:19-cv-663-ADA (W.D. Tex., filed Nov. 15, 2019) (23.8 months from case filing to trial); *NCS Multistage Inc. v. Nine Energy Serv.'s, Inc.*, No. 6:20-cv-00277-ADA (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial); *Densys Ltd. v. 3Shape Trio A/S*, 6:19-cv-00680-ADA (W.D. Tex., filed Nov. 26, 2019) (28.3 months from case filing to trial); *Appliance Computing III, Inc. v. Redfin Corp.*, No. 6:20-cv-00376-ADA (W.D. Tex., filed May 11, 2020) (24 months from case filing to trial); *Caddo Sys. Inc., v. Microchip Tech. Inc.*, No. 6:20-cv-00245-ADA (W.D. Tex., filed March 27, 2020) (26.5 months from case filing to trial); *SunStone Information Def., Inc. v. International Bus. Machines Corp.*, No. 6:20-cv-1033-ADA (W.D. Tex., filed Nov. 9, 2020) (21.0 months from case filing to trial); *NCS Multistage Inc. v. TCO Products Inc.*, No. 6:20-cv-00622-ADA (W.D. Tex., filed Sept. 9, 2020) (23.4 months from case filing to trial); *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA (W.D. Tex. filed Nov. 16, 2020) (23.1 months from case filing to trial).

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit.*'" *In re Apple*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *Id.* at 1319.

Meta claims that the NDCA has a local interest in this case because Immersion's headquarters were in the NDCA ████████, Immersion's ████████, some inventors live in NDCA, Meta has a long history in NDCA, and much of the design and development of the accused products took place in NDCA. ECF No. 20 at 15. In response, Immersion argues that the WDTX has a local interest in this case because Meta designs and

implements haptics technologies at its VR lab in the WDTX, and finds WDTX so important that it acquired two Austin based video game developers who use the haptics products including Armature Studio and Twisted Pixel. ECF No. 34 at 14-15; ECF No. 39 ¶¶ 20-21. In addition, third-party AR/VR developers that use haptics are headquartered and have offices in the WDTX, and third-party game developers in Austin use the accused technologies. ECF No. 34 at 14-15; ECF No. 39 ¶¶ 22-29. Immersion argues that third party suppliers of haptic devices and drivers have offices in WDTX and Dallas including ███████████████████ ██████████████████ ECF No. 34 at 14-15; ECF No. 39 ¶¶ 14-19. Meta responds that Immersion ignores inventors in California, the products were designed *in-part* there, and that Immersion's stockholder meeting took place in NDCA. ECF No. 50 at 5.

The Court finds that the NDCA likely has a local interest in this suit. Meta operates a facility out of the NDCA and individuals who worked on the accused product are likely located there, as well as the inventors of the patents themselves. That said, the Court also finds that the WDTX likely has a local interest in this suit, given Meta's substantial investment in Austin based game developers as well as the many individuals who likely worked on the Accused Products in Austin. *See supra* Section III(A)(i)(2). Immersion ██████████████████ ████████████████, and therefore does not bear on the Court's analysis.

Because both the NDCA and the WDTX likely have a local interest in the outcome of this litigation, the Court finds this factor is neutral.

### iii.    Familiarity of the Forum with the Law That will Govern the Case

Meta and Immersion agree that this factor is neutral; both forums are familiar with the law that will govern this case. ECF No. 20 at 15; ECF No. 34 at 14. The Court agrees.

iv. ***Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law***

Meta and Immersion agree that this factor is neutral—there are no potential conflicts here. ECF No. 20 at 15; ECF No. 34 at 14. The Court agrees.

## IV.    CONCLUSION

Having considered the private and public interest factors, the Court finds that five of the factors are neutral, two disfavor transfer (including the most important factor), and one slightly favors transfer to the NDCA. A decision to uproot litigation and transfer is not the consequence of a simple math problem. Instead, a moving party must show that the transferee forum is a *clearly* more convenient forum. The cost of attendance for willing witnesses and court congestion weigh against transfer. Only the availability of the compulsory process for non-party witnesses weigh in favor of transfer to the NDCA, and that is diminished because none of the witnesses have been alleged to be unwilling. Meta has failed to meet its burden of showing that the NDCA is a clearly more convenient forum than the WDTX. The Court's conclusions for each factor are summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Neutral |
| Cost of attendance for willing witnesses | Slightly Against Transfer |
| Availability of compulsory process to secure the attendance of witnesses | Slightly In Favor of Transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Neutral |
| Administrative difficulties flowing from court congestion | Slightly Against Transfer |
| Local interest | Neutral |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

**IT IS THEREFORE ORDERED** that Meta's Motion to Transfer Venue to the Northern District of California is **DENIED** (ECF No. 20). Because both parties agree that the Austin division is move convenient, the Court **GRANTS** transfer to the Austin Division of the Western District of Texas.

**IT IS FURTHER ORDERED** that the above-styled case be **TRANSFERRED** to the Austin Division of the Western District of Texas but remain on the docket of United States District Judge Alan D Albright and according to the scheduling order that was entered in this case on September 21, 2023. ECF No. 28.

**SIGNED** this 29th day of May, 2023.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE